1   Nathan Matthews, CA Bar No. 264248
Sierra Club
2   2101 Webster Street, Suite 1300
Oakland, CA  94612
3   Phone: (415) 977-5695
Fax: (510) 208-3140
4   nathan.matthews@sierraclub.org
5
6   *Attorney for Plaintiff Sierra Club*
*(Additional Counsel listed on signature page)*

7

8               **UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9

10   SIERRA CLUB; CENTER FOR BIOLOGICAL        )
DIVERSITY; DINÉ CITIZENS AGAINST           )
11   RUINING OUR ENVIRONMENT;                   )
EARTHWORKS; FORT BERTHOLD                   )   Case No. 4:18-cv-00524-HSG
12   PROTECTORS OF WATER AND EARTH              )
RIGHTS; SOUTHERN UTAH WILDERNESS            )   Related Case No. 4:18-cv-00521-HSG
13   ALLIANCE; THE WILDERNESS SOCIETY;          )
and WESTERN RESOURCE ADVOCATES,             )
14                                              )
                                               )   **PLAINTIFF CITIZEN GROUPS'**
15        Plaintiffs,                           )   **MOTION TO COMPLETE AND/OR**
                                               )   **SUPPLEMENT THE ADMINISTRATIVE**
16        v.                                    )   **RECORD**
                                               )
17                                              )
RYAN ZINKE, in his official capacity as    )   Judge: Hon. Haywood S. Gilliam, Jr.
18   Secretary of the Interior; BUREAU OF LAND  )   Date:  March 21, 2019
MANAGEMENT; and UNITED STATES              )   Time: 2:00 p.m.
19   DEPARTMENT OF THE INTERIOR,                )   Location:  Courtroom 2, 4th Floor
                                               )               1301 Clay St., Oakland, CA 94612
20        Defendants.                           )

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

STATEMENT OF ISSUES .....................................................................................1

STATEMENT OF FACTS .......................................................................................3

ARGUMENT ............................................................................................................6

I.   Direct Involvement by Secretary Zinke and His Staff in Tenth Circuit Reversal ..........................7

II.  Meetings with Groups Seeking to Eliminate the 2015 Rule .......................................................10

    A.   American Petroleum Institute .....................................................................12

    B.   Western Energy Alliance .............................................................................13

    C.   National Environmental Strategies ............................................................13

    D.   Ute Indian Tribe of the Uintah and Ouray Reservation ...........................14

III. Congressional Documents Explaining Need for the 2015 Rule ...............................................14

    A.   The Federal Defendants Should Complete the Record by Adding the Documents.....15

    B.   Alternatively, the Court Should Supplement the Record and Take Judicial Notice of the Congressional Documents.............................17

        1.   Supplementation of the Record with Questions and Answers.........................17

        2.   Judicial Notice of Congressional Testimony ...................................19

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adarand Contractors, Inc. v. Slater*,
  228 F.3d 1147 (10th Cir. 2000) ..................................................19

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
  785 F. Supp. 2d 799 (N.D. Cal. 2011) ..................................................19

*Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
  No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ..............................6

*Cty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ..................................................18, 19

*Daniels–Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ..................................................18

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*,
  No. 16-CV-01993-LHK, 2016 WL 4382604 (N.D. Cal. Aug. 17, 2016) ....................18

*Google, Inc. v. United States*,
  95 Fed. Cl. 661 (2011) ..................................................11, 14

*In re United States*,
  875 F.3d 1200 (9th Cir. 2017) ..................................................2

*Inst. for Fisheries Res. v. Burwell*,
  No. 16-cv-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ..........................2

*Muller-Paisner v. TIAA*,
  289 F. App'x 461 (2d Cir. 2008) ..................................................19

*Nat. Res. Def. Council v. Blank*,
  No. C-12-05380 EDL, 2013 WL 2450110 (N.D. Cal. June 5, 2013) ..........................18

*Nat. Res. Def. Council v. Gutierrez*,
  No. C 01-0421 JL, 2008 WL 11358008 (N.D. Cal. Jan. 14, 2008) ..........................10

*Oceana, Inc. v. Pritzker*,
  No. 16-CV-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21, 2017) ..................6

*Open Spirit, LLC v. United States*,
  131 Fed. Cl. 756 (2017) ..................................................11, 14

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1993) .......................................................................6, 9, 11, 14

*Pub. Power Council v. Johnson*,
    674 F.2d 791 (9th Cir. 1982) ..............................................................................6, 17

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) .....................2, 7

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. C 17-05211-WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018).....................9, 10

*Sierra Club v. Zinke*,
    No. 17-cv-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 26, 2018)................2, 6, 7

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ..............................................................................6, 14

*Water Supply & Storage Co. v. U.S. Dep't of Agric.*,
    910 F. Supp. 2d 1261 (D. Colo. 2012)........................................................................9

**Statutes**

5 U.S.C. § 706 .....................................................................................................................6

**Federal Register**

80 Fed. Reg. 16,128 (Mar. 26, 2015)............................................................... *passim*

82 Fed. Reg. 16,093 (Mar. 28, 2017)...........................................................................4

82 Fed. Reg. 34,464 (July 25, 2017) .......................................................................4, 10

82 Fed. Reg. 61,924 (Dec. 29, 2017) ...................................................................3, 4, 8

**Other Authorities**

House Subcommittee on Energy and Mineral Resources, *Oversight Hearing* (Mar. 26, 2015),
    https://naturalresources.house.gov/calendar/eventsingle.aspx?EventID=398109 ........................18

House Subcommittee on Energy and Mineral Resources, *Oversight Hearing* (July 15, 2015),
    https://naturalresources.house.gov/calendar/eventsingle.aspx?EventID=398963 ........................19

U.S. Dep't of the Interior, *Other Records*, https://www.doi.gov/foia/os/other-records ........................5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 21, 2019, at 2:00 p.m., or as soon thereafter as possible, this motion will be heard before the Honorable Haywood S. Gilliam.  Although Plaintiffs Sierra Club, et al. (collectively, the Citizen Groups) have selected a hearing date pursuant to Civil L.R. 7-2(a), the Citizen Groups believe that a hearing is unnecessary to resolve the straightforward issues presented in this motion, and therefore respectfully request that the Court resolve this motion on the papers, without hearing argument, particularly if doing so would allow the Court to resolve the motion before the noticed hearing date.

The Citizen Groups request an order compelling the completion of the administrative record with nine documents listed in an index at the end of this motion, or, in the alternative, that the Court supplement the administrative record or take judicial notice of specific documents.

Pursuant to Civil L.R. 7-2(b), this motion is based on this notice of motion, the memorandum of points and authorities in support of this motion, and the exhibits attached to this motion.

The Citizen Groups' counsel conferred with counsel for the Plaintiff State of California in Related Case No. 4:18-cv-00521-HSG, who support this motion.  Defendants Ryan Zinke, et al. (collectively, the Federal Defendants) oppose the motion and have declined to add the documents at issue to the administrative record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES**

In March 2017, the Bureau of Land Management (BLM) abruptly reversed position and announced plans to repeal a 2015 regulation, the Hydraulic Fracturing Rule, 80 Fed. Reg. 16,128 (Mar. 26, 2015) (2015 Rule), that the agency had spent nearly five years developing and two years defending in court.   In this lawsuit, the Citizen Groups allege that BLM's reversal and subsequent repeal of the 2015 Rule was the result of a political decision by the new presidential administration that disregarded the law and extensive record evidence supporting the need for the 2015 Rule.  First Am. Compl. for Declaratory & Injunctive Relief ¶¶ 78–92, 105–117 (Apr. 3, 2018), ECF No. 55.[1]

---

[1] All docket citations are to Case No. 4:18-cv-00524-HSG unless otherwise noted.

On October 5, 2018, the Federal Defendants lodged an administrative record with the Court. Notice of Lodging Admin. R. (Oct. 5, 2018), ECF No. 83.[2]  This administrative record is incomplete because it omits nine documents that were directly or indirectly considered by U.S. Department of the Interior (Interior Department) and BLM staff as they decided to eliminate the 2015 Rule.  These documents are necessary to provide the Court with an accurate and complete account of the agency's decisionmaking process.  They fall into three categories:

1.  Documents reflecting Secretary Zinke and his political appointees' direct involvement in the March 2017 decision to proceed with repealing the 2015 Rule;

2.  Documents relating to meetings and communications in early 2017 between Secretary Zinke's political appointees and oil and gas industry trade associations and other lobbyists who sought to eliminate the 2015 Rule; and

---

[2] The administrative record served by the Federal Defendants on the parties labels 723 documents, spanning 26,986 consecutively Bates-Stamped pages, as "deliberative" or "DEL."  *See* Decl. of Michael S. Freeman Ex. D (Dec. 10, 2018) (attached).  The Federal Defendants also served a privilege log on the parties.  *See id.* at Ex. E.  Despite serving these "deliberative" documents with the administrative record (and partially redacting some of them based on assertions of various privileges), the Federal Defendants have taken the position that deliberative materials are not actually part of the administrative record.  The Citizen Groups maintain that these documents are part of the administrative record, and that the government's position is incorrect as a legal matter.  This Court has recognized that the Federal Defendants' position that deliberative documents are categorically not part of the administrative record is "contrary to the law in this Circuit, as [a] host of cases . . . point out." *Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 WL 3126401, at *3 (N.D. Cal. June 26, 2018) (citing *In re Thomas E. Price*, No. 17-71121 (9th Cir. Jan. 26, 2018), Dkt. No. 20; *In re United States*, 875 F.3d 1200, 1208 (9th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 443, 445 (2017); *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017) (*Regents I*); *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017)).

Despite their erroneous legal position, the Federal Defendants have stipulated that Plaintiffs may cite these documents in, and attach them to, their summary judgment briefs.  Given that stipulation and the large number of documents involved, the parties have agreed to defer any disputes over whether the deliberative documents may be considered by the Court.  This approach will avoid the burden on the Court to address nearly 27,000 pages of documents in the abstract, and allow the Court to decide any dispute in the context of specific documents cited during summary judgment briefing.  In deferring this dispute, the parties have stipulated that the Federal Defendants reserve their right to object to Plaintiffs' citation of any particular document in summary judgment briefing, and Plaintiffs do not waive their right to use the documents in summary judgment briefing.

3.    Congressional testimony explaining the need for the 2015 Rule, which was reviewed by agency staff later involved with the repeal of the 2015 Rule.

Each of these categories includes only a handful of documents—but without them, the administrative record provides an inaccurate picture of the agency's decisionmaking process. Although the Federal Defendants excluded the documents from the administrative record they lodged with the Court, the agency released the documents in response to Freedom of Information Act (FOIA) requests for agency staff's communications about the 2015 Rule and litigation over that rule.  Moreover, the Interior Department has posted some of the documents in question to its website.

Alternatively, if the Court does not grant the Citizen Groups' motion to complete the administrative record, it should nevertheless consider several of the documents because they fall within exceptions to administrative record review and are also appropriate for judicial notice.

## STATEMENT OF FACTS

In this case, the Citizen Groups and the State of California (collectively, Plaintiffs) challenge BLM's decision to repeal nationwide health and safety standards the agency adopted in 2015 for hydraulic fracturing on public and tribal lands.  82 Fed. Reg. 61,924 (Dec. 29, 2017) (the Repeal).

BLM issued the 2015 Rule to update its 1980s-era regulations and address the new environmental and health hazards presented by the modern hydraulic fracturing boom.  First Am. Compl. ¶¶ 61–64, 70–72.  BLM began developing the regulation in 2010 at the urging of numerous experts, federal agencies, Indian tribes and the public.  *Id.* ¶ 65.  Over a period of nearly five years, the agency held numerous public forums and tribal consultation sessions, and undertook two rounds of public notice and comment on proposed regulations.  *Id.* ¶¶ 66–69.  BLM finalized the 2015 Rule in March 2015.   80 Fed. Reg. at 16,128.  It was immediately challenged in the District of Wyoming by Defendant-Intervenors Western Energy Alliance and Independent Petroleum Association of America, and several states.  First Am. Compl. ¶ 76.

For two years, BLM vigorously defended the Wyoming lawsuits, including appealing a preliminary injunction against the 2015 Rule and then appealing the Wyoming district court's final order setting aside the rule, to the Tenth Circuit.  *Id.* ¶ 77.

Oral argument in the Tenth Circuit appeal of the order setting aside the 2015 Rule was scheduled for March 22, 2017.  Oral Argument Calendar Notice, *Wyoming v. Jewell*, No. 16-8068 (10th Cir. Jan. 11, 2017), Doc. No. 01019748178.  On March 9, 2017, however, the Tenth Circuit issued a *sua sponte* order expressing "concern[] that the briefing filed by the Federal Appellants in these cases may no longer reflect the position of the Federal Appellants . . . [g]iven the recent change of Administration and the related personnel changes in the Department of Justice and the Department of [the] Interior."  Order 2–3, *Wyoming v. Zinke*, No. 16-8068 (10th Cir. Mar. 9, 2017), Doc. No. 01019776687.  The court directed BLM to "confirm whether their position on the issues presented remain the same, or have now changed" by March 15, 2017.  *Id.* at 3.

Six days later, BLM reversed its position and announced that it was abandoning a regulation it had spent seven years developing and defending in court.  On March 15, 2017, BLM told the Tenth Circuit that the 2015 Rule "does not reflect [the] policies and priorities . . . of the new Administration."  Fed. Appellants' Mot. to Continue Arg. & Hold Case in Abeyance Pending Admin. Action 2, *Wyoming v. Zinke*, No. 16-8068 (10th Cir. Mar. 15, 2017), Doc. No. 01019780139 (March 2017 Motion).  BLM's filing stated that the agency planned "to prepare a notice of proposed rulemaking . . . to rescind the 2015 Rule."  *Id.* at 2–3.  Shortly thereafter, on March 28, 2017, President Trump signed Executive Order No. 13,783, which directed the Interior Department to publish for notice and comment a proposed rule "suspending, revising, or rescinding" the 2015 Rule. 82 Fed. Reg. 16,093, 16,096 (Mar. 28, 2017).  The next day, March 29, 2017, Secretary Zinke issued Secretarial Order No. 3349 instructing that "[a]s previously announcement by the Department, BLM shall proceed expeditiously with proposing to rescind" the 2015 Rule.  HFRR_019417.[3]  Four months later, as directed by President Trump and Secretary Zinke, BLM published the proposed Repeal for public comment.  82 Fed. Reg. 34,464 (July 25, 2017).

BLM finalized the Repeal on December 29, 2017.  82 Fed. Reg. at 61,924.  Plaintiffs filed this litigation challenging the Repeal shortly thereafter.  Compl. for Declaratory & Injunctive Relief

---

[3] Citations to "HFRR_" are to documents in the incomplete administrative record that the Federal Defendants lodged with the Court on October 5, 2018.  *See* Notice of Lodging Admin. R (Oct. 5, 2018), ECF No. 83.

(Jan. 24, 2018), ECF No. 1; *see also* Compl. for Declaratory & Injunctive Relief, *Cal. ex rel. Becerra v. BLM*, No. 4:18-cv-00521-HSG (N.D. Cal. Jan. 24, 2018), ECF No. 1.

   On October 5, 2018, the Federal Defendants served the parties with an administrative record that included:

- 909 unredacted documents spanning 34,679 consecutively Bates-Stamped pages in a folder indexed as the "skinny" administrative record;

- 723 documents, 250 of which were partially redacted, spanning 26,986 consecutively Bates-Stamped pages in a folder indexed as the "deliberative" or "DEL" administrative record;

- A privilege log listing 421 documents, spanning 14,354 consecutively Bates-Stamped pages, that the Federal Defendants withheld in their entirety.

Notice of Lodging Admin. R. (Oct. 5, 2018), ECF No. 83; *see also* Freeman Decl. Ex. D (index of "DEL" documents), Ex. E (privilege log).

   Counsel for the Citizen Groups and the Federal Defendants have conferred by phone and electronic mail regarding the administrative record, and reached agreement on a number of issues. Pursuant to that agreement, the Federal Defendants have committed to file an amended administrative record on January 4, 2018, adding a number of missing documents to the record.

   The Federal Defendants did not agree, however, to include in the administrative record nine relevant documents that the Citizen Groups discovered through FOIA. In April and September 2017, Plaintiff Southern Utah Wilderness Alliance (SUWA) filed FOIA requests with the agencies seeking communications related to the 2015 Rule and the litigation over it. Freeman Decl. ¶ 2 & Ex. A. In response to that request and other FOIA requests, BLM and the Interior Department released numerous relevant documents, which are now posted on the Interior Department's web page.[4] This motion addresses nine of these documents that BLM and Interior Department decisionmakers considered directly or indirectly while developing the Repeal. The Citizen Groups move to complete the administrative record with these nine documents, or, in the alternative, to supplement the administrative record, or for the Court to take judicial notice of some of them.

---

[4] U.S. Dep't of the Interior, *Other Records*, https://www.doi.gov/foia/os/other-records (last visited Dec. 7, 2018).

# ARGUMENT

In this lawsuit, Plaintiffs allege that the Repeal is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act (APA).  *See* First Am. Compl. ¶¶ 110, 117, 123.  In reviewing whether agency actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law under the APA, Congress requires that "the court shall review the *whole record*."  5 U.S.C. § 706 (emphasis added).  The whole record encompasses "all the evidence that was before the decision-making body."  *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982) (quotation omitted).  This includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quotation omitted).  "If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless."  *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).   "An incomplete record must be viewed as a fictional account of the actual decisionmaking process."  *Id.* (quotation omitted).

"Courts . . . may grant a motion to complete the administrative record where the agency has not submitted the 'whole' record."  *Oceana, Inc. v. Pritzker*, No. 16-CV-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (quoting 5 U.S.C. § 706).  Although the agency's designation of the administrative record is presumed to be complete, plaintiffs can overcome the presumption of completeness by "identify[ing] the allegedly omitted materials with sufficient specificity and identify[ing] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record."  *Id.* (quotation omitted).  "The presumption of completeness can be rebutted by a showing of clear evidence that the agency relied on materials not in the record."  *Sierra Club*, 2018 WL 3126401, at *3.

"Plaintiffs need not show bad faith or improper motive to rebut the presumption" of completeness.  *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006); *accord Sierra Club*, 2018 WL 3126401, at *3 (explaining that the "bad faith standard applies where plaintiffs seek to go beyond the complete record to inquire into the mental processes of individual decision-makers through their testimony," but not when plaintiffs

simply seek to "complete the record with documents the agency relied on, but that are not currently included"); *Regents I*, 2017 WL 4642324, at *2 ("[B]ad faith is one basis for requiring supplementation of an administrative record, but it is not the exclusive basis.").

In *Sierra Club*, plaintiffs moved to complete the record with a variety of internal memoranda discussing the basis and need for the regulation at issue, correspondence about how the rulemaking should proceed, and draft decision documents that they received from FOIA requests.  2018 WL 3126401, at *4.  The *Sierra Club* Plaintiffs argued that these materials were clearly relevant to the decision at issue—to promulgate a regulation—and that this rebutted the presumption of completeness.  *Id.*  This Court agreed, reasoning that it was "hard to believe that reviewing policy and taking next steps [to promulgate the rule at issue] could be performed . . . without agency decision-makers or subordinates considering any underlying deliberative records."  *Id.*  The Court explained that "[t]he administrative record needs to be whole so that I can ultimately determine whether BLM" complied with the APA.  *Id.*

Similarly, in this case the administrative record is incomplete because it is missing nine documents, listed in a table at the end of this motion and provided to the Court as Exhibit B to Mr. Freeman's declaration, which fall into three categories:

1.   Documents reflecting Secretary Zinke's and his political appointees' direct involvement in the March 2017 decision to reverse course in the Tenth Circuit and proceed with repealing the 2015 Rule (Documents 4 and 6);

2.   Documents relating to meetings and communications in early 2017 between Secretary Zinke's political appointees and oil and gas industry trade associations and other lobbyists who sought to eliminate the 2015 Rule (Documents 3, 5, 7, 8, and 9); and

3.   Congressional testimony explaining the need for the 2015 Rule, which was reviewed by agency staff later involved with the 2017 Repeal (Documents 1 and 2).

## I.   Direct Involvement by Secretary Zinke and His Staff in Tenth Circuit Reversal.

The Federal Defendants have omitted two documents reflecting the direct involvement of Secretary Zinke and his staff with the decision to reverse position in the Tenth Circuit appeal.  On March 9, 2017, the Tenth Circuit *sua sponte* ordered BLM to inform the court whether agency was

still defending its 2015 Rule.  *See supra* p. 4.  Six days later, on March 15, BLM reversed its

position about the need for the 2015 Rule—which it had been developing and defending for seven

years.  *See supra* p. 4 (discussing BLM's March 15, 2017 filing).  That litigation decision was a

central part of its decisionmaking process in developing the Repeal.  The preamble to the Repeal, in

fact, details the history of that litigation and BLM's reversal.  82 Fed. Reg. at 61,925.

   The administrative record the Federal Defendants filed on October 5, 2018, however,

includes only a handful of documents from that critical window between March 9 and March 15,

2017.  *See* Index of "Skinny" HFRR Administrative Record at lines 734–35 (no documents between

March 1, 2017 and March 20, 2017); Freeman Decl. Ex. D (Index of "DEL" HFRR Administrative

Record) at lines 722–724 (three documents dated March 15, 2017, and no documents from earlier in

2017); Freeman Decl. Ex. E (Privilege Log) at lines 419–23 (five documents dated March 14 and 15,

2017, and no documents from earlier in 2017).  In contrast to this gap in the administrative record,

documents obtained through SUWA's FOIA requests show that Secretary Zinke's political

appointees were extensively involved in email correspondence, phone calls, and meetings to decide

how to respond to the Tenth Circuit order.

   Plaintiffs seek to complete the administrative record with two documents reflecting this

involvement.  First, Document 4 is a calendar entry showing that Secretary Zinke met with his staff

to discuss the 2015 Rule on March 15, 2017, shortly before BLM submitted its Tenth Circuit filing

reversing position on the 2015 Rule.  Freeman Decl. ¶ 12 (discussing Freeman Decl. Ex. B at FOIA-

34 to FOIA-37).[5]  The record of this meeting is clearly relevant because Plaintiffs allege that the

Repeal represented a political decision by Secretary Zinke that disregarded the extensive evidence

supporting the need for the 2015 Rule.  *See* First Am. Compl. ¶¶ 85–92, 108–09, 115–17.  Secretary

Zinke's direct involvement at a critical stage in the process was undoubtedly considered by BLM

staff as they evaluated the evidence and determined whether to issue a final decision repealing the

2015 Rule.  Indeed, Secretary Zinke's March 15 meeting documents part of a key step in that

---

[5] The calendar notice indicates that the meeting was held at 3:00 p.m. Eastern Time on March 15, 2017.  Freeman Decl. Ex. B at FOIA-34.  BLM submitted the March 2017 Motion to the Tenth Circuit at 6:21 p.m. Eastern Time that evening.  Freeman Decl. ¶ 12.

decisionmaking process.  *See, e.g., Water Supply & Storage Co. v. U.S. Dep't of Agric.*, 910 F. Supp. 2d 1261, 1267–19 (D. Colo. 2012) (completing administrative record with documents of agency meeting that "reflect deliberative agency discussion that appears nowhere in the agencies' designated Record").

The Federal Defendants, in fact, have conceded that records reflecting involvement by Secretary Zinke's political appointees were part of the agency's deliberations in developing the Repeal.  The Federal Defendants have agreed to add to the "deliberative" part of the administrative record a series of emails dated March 11 to 14, 2017 between Secretary Zinke's political appointees and the Acting BLM Director discussing how to respond to the Tenth Circuit's March 9, 2017 Order. Freeman Decl. ¶ 18 (discussing Freeman Decl. Ex. C at 31–53).  These documents are heavily redacted, but they show that Secretary Zinke's political appointees, as well BLM's Acting Director, reviewed and discussed drafts of the agency's March 2017 Motion before it was submitted to the Tenth Circuit.[6]

The record of Secretary Zinke's March 15 meeting is just as relevant, and just as much a part of the agency's deliberations: it shows that in addition to his political appointees, Secretary Zinke himself was personally involved in BLM's reversal.  *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211-WHA, 2018 WL 1210551, at *4 (N.D. Cal. Mar. 8, 2018) (*Regents II*) (recognizing that "references to a meeting on the subject" with the Acting Secretary were relevant to assessing "verbal input" given to Acting Secretary by subordinates); *Water Supply & Storage Co.*, 910 F. Supp. 2d at 1268.  Omitting records of Secretary Zinke's direct involvement would render the administrative record "a fictional account of the actual decisionmaking process."  *Portland Audubon Soc'y*, 984 F.2d at 1548 (quotation omitted).

Second, Document 6 is an email containing a news report about the Tenth Circuit's March 9, 2017 Order, sent the morning after the Tenth Circuit issued the Order, notifying Katharine

---

[6] In addition to the selection that the Federal Defendants have agreed to add to the administrative record, responses to SUWA's FOIA requests turned up dozens of similar, heavily redacted emails in the same time period from Secretary Zinke's political appointees.  Freeman Decl. ¶ 18.  The selection the Federal Defendants have agreed to add to the record provides a representative sample of these emails.

MacGregor of the new development.  *See* Freeman Decl. ¶ 14 (discussing Freeman Decl. Ex. B at FOIA-42 to FOIA-44).  In 2017, Ms. MacGregor served as both Acting Assistant Secretary for Land and Minerals Management and Principal Deputy Assistant Secretary for Land and Minerals Management.[7]  *Id.* ¶ 10.  Ms. MacGregor was extensively involved in development of the Repeal: her name appears approximately 230 times in emails and other documents in the incomplete administrative record served by the Federal Defendants.  *Id.*  She is the responsible Interior Department official who actually signed the proposed Repeal in her capacity as Acting Assistant Secretary for Land and Mineral Management.  82 Fed. Reg. at 34,470.  Her receipt of this notice and news article reflects that the document was before the agency, and it is thus properly part of the administrative record.  *See Nat. Res. Def. Council v. Gutierrez*, No. C 01-0421 JL, 2008 WL 11358008, at *4 (N.D. Cal. Jan. 14, 2008) ("The law is that the Agency must include in the Administrative Record all information that was before it, regardless of whether it is incorporated in the final decision, or by implication, whether the Agency considered it.").  Indeed, given that the article was emailed to Ms. MacGregor directly, there is strong evidence that a key agency decisionmaker considered it, directly or indirectly, in developing the Repeal.  *See Regents II*, 2018 WL 1210551, at *5 (ordering defendants to complete the record with "[a]ll materials actually seen or considered, however briefly, by the Acting Secretary in connection with the potential or actual decision to rescind [the regulation at issue]").

## II.    Meetings with Groups Seeking to Eliminate the 2015 Rule.

At the time of BLM's March 2017 reversal, Secretary Zinke's political appointees also were scheduling and holding meetings with representatives of industry trade associations and other entities seeking to eliminate the 2015 Rule.  The Federal Defendants have omitted records of these meetings and related communications from the administrative record filed with the Court.  These records, which the Citizen Groups have obtained through FOIA requests and other research, are properly part of the administrative record.  *See Regents II*, 2018 WL 1210551, at *4 (ordering

---

[7] Ms. MacGregor was a former majority (Republican) staffer for the House of Representatives Subcommittee on Energy and Mineral Resources (and for Congressman Doug Lamborn, chair of that subcommittee), which held hearings critical of the 2015 Rule.  Freeman Decl. ¶ 9.

agency to complete administrative record with documents reflecting "verbal input" received by key agency decisionmakers in the course of deciding to rescind a regulation, because "verbal input, of course, can be every bit as influential—perhaps more influential—in shaping informal agency decisions as written input").

Secretary Zinke's political appointees' meetings with parties seeking to eliminate the 2015 Rule must have been directly or indirectly considered by these Interior Department staff as they worked to repeal that regulation. *See Open Spirit, LLC v. United States,* 131 Fed. Cl. 756, 781 (2017) (adding to the administrative record a calendar entry supporting plaintiffs' claim of bias toward one bidder by showing that agency was communicating with different company during bid process); *Google, Inc. v. United States*, 95 Fed. Cl. 661, 680 (2011) (discussing email records demonstrating that decisionmakers were attending meetings with a company seeking a contract, and noting that administrative record in lawsuit challenging agency awarding contract to that company was likely incomplete given absence of notes from such meetings). Including records showing that these political appointees were meeting with industry lobbyists is necessary for the administrative record to present an accurate and complete account of the Federal Defendants' decisionmaking process. *Portland Audubon Soc'y*, 984 F.2d at 1548.

Secretary Zinke's political appointees involved in the meetings and communications with groups seeking to overturn the 2015 Rule also were extensively involved in the decisionmaking process that led to the Repeal. As noted above, Ms. MacGregor's name appears more than 200 times in the administrative record served by the Federal Defendants. *See supra* p. 10. Similarly, other Interior Department officials involved in these meetings, whose specific roles are described below, appear throughout that administrative record:

- Mike Nedd's name appears on approximately 126 documents;
- Kathleen Benedetto's name appears on approximately 57 documents;
- James Cason's name appears on approximately 16 documents;
- Downey Magallanes' name appears on approximately 12 documents;
- Daniel Jorjani's name appears on approximately 16 documents; and

- Richard Cardinale's name appears on approximately 62 documents.[8]

Freeman Decl. ¶ 11.

The Citizen Groups specifically seek to complete the administrative record with evidence of communications between Secretary Zinke's political appointees and four groups: Defendant-Intervenor American Petroleum Institute (API), Defendant-Intervenor Western Energy Alliance (WEA), an oil and gas lobbying firm named National Environmental Strategies, and the Ute Indian Tribe.

### A.      American Petroleum Institute

The Federal Defendants should add to the administrative record Document 9, a calendar entry showing that on February 27, 2017, Associate Deputy Secretary of the Interior James Cason met with API regarding "Energy Issues."  Freeman Decl. ¶ 17 (discussing Freeman Decl. Ex. B at FOIA-49).  In requesting the meeting with Mr. Cason and "other appropriate DOI political staff," API submitted a list of "Energy Policy Priorities" that identified elimination of the 2015 Rule as a "Priorit[y] for Immediate Action" by the new administration.  Freeman Decl. Ex. C at 1, 3, 16–17.[9]

The February 27 calendar entry indicates that in addition to Mr. Cason, several of Secretary Zinke's other political appointees attended the meeting, and they later participated in developing the Repeal.  These individuals include Downey Magallanes (who was Acting Deputy Chief of Staff and Senior Advisor and Counselor to Secretary Zinke) and Daniel Jorjani (Principal Deputy Solicitor for the Interior Department, who prior to joining the administration in 2017 had worked for several groups connected to the industrialists Charles G. and David H. Koch).  Freeman Decl. ¶ 11.  This meeting occurred only two weeks before BLM abandoned its defense of the 2015 Rule in the Tenth Circuit.

---

[8] Mr. Cardinale also provided a sworn declaration to the Tenth Circuit in support of BLM's March 15, 2017 reversal, reporting that BLM had determined that "the 2015 Rule does not reflect [the new Administration's] policies and priorities," and that BLM therefore intended to "prepar[e] a notice of proposed rulemaking . . . to rescind the 2015 Rule."  Decl. of Richard T. Cardinale ¶¶ 4–5 (Mar. 15, 2017) (attached to Fed. Appellants' Mot. to Continue Arg. & Hold Case in Abeyance Pending Admin. Action, *Wyoming v. Zinke*, No. 16-8068 (10th Cir. Mar. 15, 2017), Doc. No. 01019780139).

[9] The Federal Defendants have agreed to add API's meeting request to the administrative record. *See* Freeman Decl. ¶ 18.  That request, however, does not show whether the meeting occurred or who attended it.  *See id.* ¶¶ 17–18.  The February 27 calendar entry provides that information.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Western Energy Alliance

WEA was one of the industry trade associations that challenged the 2015 Rule in the Tenth Circuit.  The record should be completed with Document 8, which provides evidence of an April 25, 2017 meeting between Secretary Zinke and WEA representatives.  *See* Freeman Decl. ¶ 16.  This meeting occurred just a few weeks after the Federal Defendants reversed position in the Tenth Circuit, and early in BLM's process of developing the Repeal.  Document 8, a memo prepared for the Secretary in advance of the meeting, indicates that "[m]eeting attendees will likely be very concerned about the" 2015 Rule.  Freeman Decl. Ex. B at FOIA-46 to FOIA-47.

In addition, Document 3 includes partially-redacted email correspondence obtained through FOIA, showing that WEA either proposed or scheduled a meeting with Mr. Cason, Mr. Jorjani, Ms. Magallanes, Ms. MacGregor, Richard Cardinale (Chief of Staff to the Assistant Secretary for Land and Minerals Management) and others to discuss "settlement options" on February 28 or March 1, 2017, shortly before BLM's reversal in the Tenth Circuit.  *See id.* at FOIA-30.  While the unredacted portion of the message does not specify which litigation is involved, this email was released as part of a set of other documents requesting meetings about the 2015 Rule.  *See* Freeman Decl. ¶ 11.

### C.    National Environmental Strategies

National Environmental Strategies is a lobbying firm that represents oil and gas industry clients.  Document 5 is an email sent by Ken Burton, a National Environmental Strategies lobbyist, to Ms. MacGregor on March 10, 2017—the morning after the Tenth Circuit ordered BLM to confirm its position on the 2015 Rule—urging the Interior Department to discuss settlement with industry trade associations and other parties challenging the 2015 Rule.  Freeman Decl. ¶ 13 (discussing Freeman Decl. Ex. B at FOIA-38 to FOIA-41).  Mr. Burton's email message urged that the Interior Department "needs to have their attorneys reach out to the industry and state attorney working on the case.  One school of thought of course is that the Administration recognizes state primacy of their hydraulic fracturing rule and drop the rest.  But before anything can move forward they need to direct their DOJ attorneys to enter into settlement negotiations."  Freeman Decl. Ex. B at FOIA-40.  Ms. MacGregor clearly reviewed the email—she responded later that day to say "Hey Kent – Thanks

for sharing." *Id.* at FOIA-38.  Document 5 is therefore a document considered directly by an agency decisionmaker during a crucial time period in the decisionmaking process.

**D.     Ute Indian Tribe of the Uintah and Ouray Reservation**

Document 3, also obtained through SUWA's FOIA requests, shows that in mid-February 2017, another party challenging the 2015 Rule in the Tenth Circuit ligitation—the Ute Tribe of the Uintah and Ouray Reservation—sought a meeting about the 2015 Rule with Interior Department staff, including Kathleen Benedetto (a "Senior Advisor" at BLM who reportedly worked on behalf of mining interests before joining the administration in 2017), and Acting BLM Director Mike Nedd. Freeman Decl. ¶ 11 & Ex. B at FOIA-29, FOIA-31 to FOIA-33.  Document 7 shows that the meeting was scheduled on March 10, 2017—immediately after the Tenth Circuit ordered BLM to confirm its position on the 2015 Rule.  Freeman Decl. ¶ 15 (discussing Freeman Decl. Ex. B at FOIA-45).  Ms. MacGregor organized the meeting and Ms. Magallanes, Mr. Nedd, Mr. Cardinale, and others were invited.  Freeman Decl. Ex. B at FOIA-45.

Records of these meetings and communications with parties seeking to eliminate the 2015 Rule must have been directly or indirectly considered by these Interior Department staff as they worked to repeal that regulation.  *See Open Spirit, LLC,* 131 Fed. Cl. at 781; *Google*, 95 Fed. Cl. at 680.  Including records of these communications is necessary for the administrative record to accurately reflect the Federal Defendants' decisionmaking process, and they are therefore part of the administrative record.  *Portland Audubon Soc'y*, 984 F.2d at 1548.

**III.     Congressional Documents Explaining Need for the 2015 Rule.**

The Federal Defendants also have omitted from the administrative record relevant documents relating to Congressional testimony about the 2015 Rule.  These records provide important details explaining the need and justification for the rule, and they were reviewed by agency staff who later worked on the Repeal.  Freeman Decl. ¶¶ 5–8.  Because they were before agency staff who developed the Repeal, these records are properly part of the administrative record.  *Thompson*, 885 F.2d at 555–56.  Alternatively, the Court should supplement the administrative record with some of these extra-record materials, and take judicial notice of others.

1
**A.**     **The Federal Defendants Should Complete the Record by Adding the Documents.**

2      First, the record omits Document 1, a set of questions and answers that were prepared in

3   connection with a March 26, 2015 BLM budget hearing before the House of Representatives

4   Committee on Natural Resources' Subcommittee on Energy and Mineral Resources for use by then-

5   BLM Director Neil Kornze, who testified at the hearing.  Freeman Decl. ¶ 5 (discussing Freeman

6   Decl. Ex. B at FOIA-1 to FOIA-6).  The questions and answers were reviewed by a BLM staffer, Jill

7   Moran, who later was involved in the decisionmaking process for the Repeal.  Ms. Moran was the

8   BLM staff person who sent Ms. MacGregor the news article about the Tenth Circuit's March 2017

9   Order in Document 6.  *See supra* pp. 9–10.  Ms. Moran's name also appears on approximately 47

10   emails and other documents in the incomplete administrative record BLM produced on October 5,

11   2018.  Freeman Decl. ¶ 6.

12      Document 1 provides important details supporting the rationale for the 2015 Rule.  One of

13   the reasons BLM developed the 2015 Rule was that the agency needed additional information in

14   order to adequately manage modern drilling and fracturing operations.  *See, e.g.,* 80 Fed. Reg. at

15   16,154 ("BLM has determined that the collections of information in the [2015 Rule] are necessary to

16   enable the BLM to meet its statutory obligations" to regulate operations on federal and tribal lands,

17   and protect those lands and other resources).

18      Two areas where the 2015 Rule would require significant new information include:  (a) the

19   requirement for companies to obtain prior BLM approval for hydraulic fracturing operations, and (b)

20   certain provisions intended to ensure adequate well construction.  *See id.* at 16,147 (discussing new

21   information associated with obtaining prior BLM approval for hydraulic fracturing); *id.* at 16,180,

22   16,197 (discussing new information required to assure integrity of well casing and cementing).

23   Plaintiffs allege that BLM's Repeal decision overlooked many of the benefits of the 2015 Rule,

24   including these two requirements.  *See* First Am. Compl. ¶¶ 73–74, 89–90.

25      Director Kornze's question and answer document provides two telling examples illustrating

26   the need for better information.  First, while BLM *estimated* that 90 percent of wells drilled in 2013

27   on federal and Indian lands are hydraulically fractured, 80 Fed. Reg. at 16,131, Director Kornze

28   noted something that BLM had not expressly acknowledged in the 2015 Rule itself: the agency does

not actually know how many wells are hydraulically fractured.  Director Kornze acknowledged that: "[we] don't know exactly how many wells are fracked. . . .  Companies have not been required to inform us if they're going to be using hydraulic fracturing on public lands. But with this new rule, they will have to do that."  Freeman Decl. Ex. B. at FOIA-5.  BLM realized in 2015 that obtaining that information would allow it to reduce adverse impacts from hydraulic fracturing operations.  *See* 80 Fed. Reg. at 16,147 (requirement to obtain prior BLM approval for hydraulic fracturing is "an essential part of" the 2015 Rule because information provided in that process "allows the BLM to mitigate potential impacts").

Just as troubling, Director Kornze's answers reveal that under its 1980s-era regulations, BLM has not been collecting information necessary to track how often companies have problems when cementing the protective casing around wells.[10]  Director Kornze's answers indicated that while more than 2,500 wells were drilled on public lands in 2014, BLM could not tell how many of them had cementing problems: "Companies have not been required to inform us if they have cementing problems.  But under this new rule, they will have to do that."  Freeman Decl. Ex. B at FOIA-6.  BLM recognized in 2015 that without knowing when cementing problems arise, the agency is hampered in addressing those well construction problems and preventing groundwater contamination from them.  *See* 80 Fed. Reg. at 16,156 (explaining that the "requirement that the [company drilling a well] receive BLM approval prior to remediating inadequate cementing will help to ensure protection of aquifers").

Second, Document 2 shows that in July 2015, the House of Representatives Subcommittee on Energy and Mineral Resources held a hearing focused specifically on the 2015 Rule.  Director Kornze testified at that hearing, along with Professor Hannah Wiseman, whose research specializes in hydraulic fracturing and its impacts.  *See* Freeman Decl. ¶ 7.  Director Kornze's and Professor Wiseman's testimony covered a variety of issues directly relevant to the Repeal.  For example, their written testimony addresses in detail the need for the 2015 Rule, BLM's legal authority to issue the

---

[10] "Cementing" refers to the cement used to hold in place the casings (pipes) in the well bore. Casing and cementing are key steps relied on to prevent oil and gas wells from leaking into subsurface groundwater.  *See* HFRR_021132; First Am. Compl. ¶ 90.

rule, the evidence of accidents and risks addressed by that regulation, and how the 2015 Rule provides benefits above and beyond state regulations.  *See* Freeman Decl. Ex. B at FOIA-7 to FOIA-28.

Ms. Moran, the BLM staffer who later worked to develop the Repeal, helped prepare Director Kornze's written testimony, and also obtained a copy of Professor Wiseman's testimony. Freeman Decl. Ex. B at FOIA-7 and FOIA-20.  In addition, Ms. MacGregor, who, as discussed above, signed the proposed Repeal and was extensively involved in developing the Repeal, worked for the Majority (Republican) staff of the House subcommittee holding the hearing in 2015. Freeman Decl. ¶ 9.  Ms. MacGregor received that written testimony in her role with the House Subcommittee.  *Id.* ¶ 8 (discussing Freeman Decl. Ex. B at FOIA-20).

Director Kornze's March 2015 questions and answers document, and the July 2015 written testimony, are directly relevant to the Repeal, and were before BLM staff who later worked on repealing the 2015 Rule.  Those documents therefore should be part of the record.  *See Pub. Power Council*, 674 F.2d at 794 (the record encompasses "all the evidence that was before the decisionmaking body" (quotation omitted)).

## B.   Alternatively, the Court Should Supplement the Record and Take Judicial Notice of the Congressional Documents.

In the alternative, the Citizen Groups respectfully move the Court to supplement the administrative record with Director Kornze's questions and answers document and to take judicial notice of Professor Wiseman's and Director Kornze's Congressional testimony.

### 1.   Supplementation of the Record with Questions and Answers.

The Ninth Circuit allows courts to supplement the record with evidence from outside the administrative record in four circumstances:

(1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision,

(2) when the agency has relied on documents not in the record,

(3) when supplementing the record is necessary to explain technical terms or complex subject matter, or

(4) when plaintiffs make a showing of agency bad faith."

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 16-CV-01993-LHK, 2016 WL 4382604, at *9 (N.D. Cal. Aug. 17, 2016) (quotations and alterations omitted).

The first and third of these reasons are applicable here.  First, the question and answer document is necessary for the Court to determine whether BLM decisionmakers considered all relevant factors in adopting the Repeal.  *See Nat. Res. Def. Council v. Blank*, No. C-12-05380 EDL, 2013 WL 2450110, at *3–4 (N.D. Cal. June 5, 2013) (supplementing record with declarations including information necessary to determining whether agency overlooked relevant factors). Director Kornze's explanation makes clear that BLM adopted the 2015 Rule in part because it needed additional information about hydraulic fracturing operations, the frequency with which operators encounter cementing problems, and the myriad other issues that were not addressed in the agency's outdated regulations.  This need for the 2015 Rule was clearly a relevant factor for BLM staff developing the Repeal to consider.  But BLM apparently disregarded it, even though key agency staff involved with the 2017 Repeal decision—Ms. MacGregor and Ms. Moran—also participated in the 2015 Congressional hearing.[11]

The third reason for supplementing the record also applies, because BLM's bureaucratic pathway for obtaining information about hydraulic fracturing operations and cementing failures is a highly complex and technical subject matter, and Director Kornze's questions and answers document will directly aid the Court in understanding it.  *See Defs. of Wildlife*, 2016 WL 4382604, at *9 (supplementing the administrative record with documents that explain technical materials).  It is therefore appropriate for the Court to supplement the administrative record with Document 1.

---

[11] Part of substance of the question and answer document is also covered in Director Kornze's live testimony at the March 26, 2015 hearing.  A video of that testimony is available starting at approximately 1:44:30 in the recording on the Congressional Committee's website: https://naturalresources.house.gov/calendar/eventsingle.aspx?EventID=398109.  If the Court does not supplement the record with Document 1, the Citizen Groups request that it take judicial notice of the live testimony.  *See Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 510 n.2 (N.D. Cal. 2017) ("[C]ourts may judicially notice information and official documents contained on official government websites." (*citing Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010))); *see also infra* p. 19 (explaining that courts may take judicial notice of Congressional testimony).

### 2.      Judicial Notice of Congressional Testimony.

The Court also may take judicial notice of Director Kornze's and Professor Wiseman's written testimony before Congress.  Courts regularly take judicial notice of such Congressional testimony.  *See, e.g.*, *Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008); *Adarand Contractors, Inc. v. Slater*, 228 F.3d 1147, 1168–1170 & n.12 (10th Cir. 2000), *certiorari dismissed as improvidently granted sub nom. Adarand Contractors, Inc. v. Mineta*, 534 U.S. 103 (2001); *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 834 (N.D. Cal. 2011).

Professor Wiseman and Director Kornze's written testimony was submitted to the House Committee on Natural Resources in connection with their July 15, 2015 appearance before that body's Subcommittee on Energy and Mineral Resources.[12]  *See Cty. of Santa Clara*, 250 F. Supp. 3d at 510 n.2 (taking judicial notice of letter sent from agency staffer to Congressional Subcommittee). The fact of that testimony is appropriate for judicial notice because it shows (contrary to BLM's statements in issuing the Repeal) that the agency was aware of substantial evidence of the kinds of accidents the 2015 Rule was designed to prevent, and that there were benefits of the 2015 Rule because it went above and beyond state regulations.

### CONCLUSION

For the foregoing reasons, the Citizen Groups respectfully request that the Court order the Federal Defendants to complete the administrative record with the nine documents discussed above that the Federal Defendants have declined to add to the administrative record.  Alternatively, the Citizen Groups request that the Court supplement the administrative record with Document 1, and take judicial notice of Document 2.

---

[12] Their testimony is available on the House Committee on Natural Resources' website at https://naturalresources.house.gov/calendar/eventsingle.aspx?EventID=398963.

Plaintiff Citizen Groups' Motion to Complete and/or Supplement the Administrative Record
Case No. 4:18-cv-00524-HSG (Related to Case No. 4:18-cv-00521-HSG)                    19

Respectfully submitted this 10th day of December, 2018,

/s/ Nathan Matthews
Nathan Matthews, CA Bar No. 264248
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA  94612
Phone: (415) 977-5695
Fax: (510) 208-3140
nathan.matthews@sierraclub.org

*Attorney for Plaintiff Sierra Club*

Michael S. Freeman, CO Bar No. 30007 (*admitted pro hac vice*)
Joel Minor, CO Bar No. 47822 (*admitted pro hac vice*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Phone: (303) 623-9466
Fax: (303) 623-8083
mfreeman@earthjustice.org
jminor@earthjustice.org

*Attorneys for Plaintiffs Sierra Club, Center for Biological Diversity, Diné Citizens Against Ruining Our Environment, Earthworks, Fort Berthold Protectors of Water and Earth Rights, Southern Utah Wilderness Alliance, The Wilderness Society, and Western Resource Advocates*

**INDEX OF DOCUMENTS MISSING FROM ADMINISTRATIVE RECORD**
**(FREEMAN DECLARATION EXHIBIT B)**

| DOC. NO. | PAGE RANGE | DESCRIPTION |
|---|---|---|
| 1 | FOIA-001 to FOIA-006 | BLM Director Neil Kornze Questions for BLM-Forest Service Fiscal Year 2016 Budget Hearing (Mar. 26, 2015) |
| 2 | FOIA-007 to FOIA-028 | Congressional Testimony of BLM Director Neil Kornze and Hannah J. Wiseman, re: The Future of Hydraulic Fracturing on Federally Managed Lands, U.S. House of Representatives, Committee on Natural Resources, Subcommittee on Energy and Mineral Resources (July 13, 2015) |
| 3 | FOIA-029 to FOIA-033 | Emails re: Settlement Meetings with Ute Tribe and Western Energy Alliance (Feb. 13–15, 2017) |
| 4 | FOIA-034 to FOIA-037 | Calendar Invite re: Meeting with Secretary Zinke to Discuss Fracking Rule (March 15, 2017) |
| 5 | FOIA-038 to FOIA-041 | Email from Kent Burton to Katharine MacGregor re: Hydraulic Fracturing Rule (March 10, 2017) |
| 6 | FOIA-042 to FOIA-044 | Email from Jill Moran to Katharine MacGregor and Richard Cardinale with Article re: Hydraulic Fracturing Rule Litigation (March 10, 2017) |
| 7 | FOIA-045 | Calendar Invite re: Katharine MacGregor Meeting with Ute Tribe re Hydraulic Fracturing Rule (Mar. 10, 2017) |
| 8 | FOIA-046 to FOIA-047 | Western Energy Alliance Briefing Memorandum for Secretary Zinke. (April 25, 2017) |
| 9 | FOIA-048 to FOIA-050 | James Cason Calendar Entries |