Nathan Matthews, CA Bar No. 264248
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
Phone: (415) 977-5695
Fax: (510) 208-3140
nathan.matthews@sierraclub.org

*Attorney for Plaintiff Sierra Club*
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT; EARTHWORKS; FORT BERTHOLD PROTECTORS OF WATER AND EARTH RIGHTS; SOUTHERN UTAH WILDERNESS ALLIANCE; THE WILDERNESS SOCIETY; and WESTERN RESOURCE ADVOCATES,

Plaintiffs,

v.

RYAN ZINKE, in his official capacity as Secretary of the Interior; BUREAU OF LAND MANAGEMENT; and UNITED STATES DEPARTMENT OF THE INTERIOR,

Defendants.

Case No. 4:18-cv-00524-HSG

Related Case No. 4:18-cv-00521-HSG

**PLAINTIFF CITIZEN GROUPS' REPLY POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPLETE AND/OR SUPPLEMENT THE ADMINISTRATIVE RECORD**

Judge: Hon. Haywood S. Gilliam, Jr.
Date: March 21, 2019
Time: 2:00 p.m.
Location: Courtroom 2, 4th Floor
1301 Clay St., Oakland, CA 94612

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related to Case No. 4:18-cv-00521-HSG)*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................2

I. Documents Showing Meetings and Verbal Input to Decisionmakers Are Part of the Complete Record (Documents 3–9). ....................................................................................................2

A. Calendar Notices and Emails Regarding Meetings Are Part of the Administrative Record (Documents 3, 4, 7, 8, 9). ....................................................................................................3

B. Communications About Litigation Over the 2015 Rule Are Part of the Administrative Record for the Repeal (Documents 3, 5, 6) ....................................................................................................6

II. Congressional Documents Explaining the Need for the 2015 Rule Should Be Considered by the Court (Documents 1 and 2) ....................................................................................................7

A. The Court Should Complete the Administrative Record with Documents 1 and 2 ....................................................................................................7

B. In the Alternative, the Court Should Supplement the Record or Take Judicial Notice of Documents 1 and 2 ....................................................................................................10

1. The Court Should Supplement the Record with Document 1 ....................................................................................................10

2. The Court Can Take Judicial Notice of the Congressional Testimony ....................................................................................................12

CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Cal. ex rel. Lockyer v. U.S. Dep't of Agric., No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ....................................3, 7, 9

City of Las Vegas, Nev. v. Fed. Aviation Admin., 570 F.3d 1109 (9th Cir. 2009) ....................................13

Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930 (9th Cir. 2006) ....................................10

Cty. of Los Angeles v. Shalala, 992 F. Supp. 26 (D.D.C. 1998) ....................................12

Defs. of Wildlife v. U.S. Fish & Wildlife Serv., No. 16-CV-01993-LHK, 2016 WL 4382604 (N.D. Cal. Aug. 17, 2016) ....................................10

Desert Water Agency v. U.S. Dep't of Interior, 849 F.3d 1250 (9th Cir. 2017) ....................................13

Gill v. Dep't of Justice, No. 14-CV-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015). ....................................2

Google, Inc. v. United States, 95 Fed. Cl. 661 (2011) ....................................3–4

In re Delta Smelt Consol. Cases, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946 (E.D. Cal. June 21, 2010) ....................................11

Madison Servs., Inc. v. United States, 92 Fed. Cl. 120 (2010) ....................................13

N.M. ex rel. Richardson v. BLM, 565 F.3d 683 (10th Cir. 2009) ....................................13

Oceana, Inc. v. Pritzker, No. 16-CV-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21, 2017) ....................................2

Open Spirit, LLC v. United States, 131 Fed. Cl. 756 (2017) ....................................3

People with Disabilities Found. v. Colvin, No. 15-cv-02570-HSG, 2016 WL 2984898 (N.D. Cal. May 24, 2016) ....................................13

Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534 (9th Cir. 1993) ........................................ 8, 10

Pub. Power Council v. Johnson, 674 F.2d 791 (9th Cir. 1982) ........................................ 12

Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec. , No. C 17-05211-WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) ........................................ 4, 5

Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260 (4th Cir. 2018) ........................................ 13

Sierra Club v. Zinke, No. 17-cv-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 26, 2018) ........................................ 9

Thompson v. U.S. Dep't of Labor, 885 F.2d 551 (9th Cir. 1989) ........................................ 2, 5

Today's IV, Inc. v. Fed. Transit Admin., No. LACV13-00378 JAK (PLAx), 2014 WL 5313943 (C.D. Cal. Sept. 12, 2014) ........................................ 13

United States v. Carpenter, No. 3:99-cv-00547-RLH-RAM, 2011 WL 4763675 (D. Nev. Oct. 7, 2011) ........................................ 6

Water Supply & Storage Co. v. U.S. Dep't of Agric., 910 F. Supp. 2d 1261 (D. Colo. 2012) ........................................ 3, 9

**Statutes**

5 U.S.C. § 706 ........................................ 2

**Federal Register**

80 Fed. Reg. 16,128 (Mar. 26, 2015) ........................................ 1, 11

82 Fed. Reg. 34,464 (July 25, 2017) ........................................ 6

82 Fed. Reg. 61,924 (Dec. 29, 2017) ........................................ 1, 6, 8, 12

**INTRODUCTION**

Plaintiffs Sierra Club, et. al. (collectively, the Citizen Groups), allege that the Bureau of Land Management's (BLM) sudden decision to repeal common-sense standards to protect federal and tribal lands and waters from hydraulic fracturing, 82 Fed. Reg. 61,924 (Dec. 29, 2017) (the Repeal), was arbitrary, politically-driven, and counter to extensive evidence demonstrating the need for the Hydraulic Fracturing Rule, 80 Fed. Reg. 16,128 (Mar. 26, 2015) (2015 Rule). First Am. Compl. for Declaratory & Injunctive Relief ¶¶ 78–92, 105–117 (Apr. 3, 2018), ECF No. 55 (First Am. Compl).[1] The Citizen Groups have moved to complete the administrative record with nine documents showing that: (a) Secretary of the Interior Ryan Zinke and other key agency decisionmakers were meeting with industry trade associations and other opponents of the 2015 Rule at the same time they were deciding to repeal that regulation, and (b) those agency decisionmakers were well aware of—and thus disregarded—the reasons why the 2015 Rule was necessary in the first place. Pl. Citizen Grps.' Mot. to Complete &/or Suppl. the Admin. R. 2–3 (Dec. 10, 2018), ECF No. 85 (Citizen Groups' Motion).

BLM does not contest the facts discussed in the Citizen Groups' Motion, or that Freedom of Information Act (FOIA) requests have turned up numerous relevant documents omitted from the administrative record lodged with the Court. See Fed. Defs.' Opp'n to Pls.' Mot. to Complete &/or Suppl. the Admin. R. 5–6 (Dec. 21, 2018), ECF No. 90 (BLM Resp.). BLM also does not dispute that "new political officials influenced the rulemaking process" during the 2017 Repeal. Id. at 6. Most importantly, BLM fails to dispute the central legal basis for the Citizen Groups' Motion: that the nine documents were created or reviewed by key decisionmakers involved in repealing the 2015 Rule—Secretary Zinke, Acting Assistant Secretary for Land and Minerals Management Katharine MacGregor, Associate Deputy Secretary James Cason, and others.

These documents are necessary for the administrative record to provide an accurate account of BLM's decisionmaking process. The Court should order BLM to complete the record with them.

[1] All docket citations are to Case No. 4:18-cv-00524-HSG.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 1

## ARGUMENT

Because the Administrative Procedure Act (APA) requires courts to review the "whole record" underlying an agency decision, 5 U.S.C. § 706, administrative records much include "all documents and materials directly and indirectly considered by agency decision-makers," including "evidence contrary to the agency's position," Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989). BLM makes much of the presumption of regularity that attaches to an administrative record. See BLM Resp. at 4–5. But BLM largely ignores the two-part test for plaintiffs to overcome that presumption: (1) "identify[ing] the allegedly omitted materials with sufficient specificity," and (2) "identify[ing] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." Oceana, Inc. v. Pritzker, No. 16-CV-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (quotation omitted). When an agency "certifie[s] an administrative record that, on its face, appears to contain less than all documents and materials directly or indirectly considered by the agency in making its decision, Plaintiffs have sufficiently rebutted the presumption of completeness." Gill v. Dep't of Justice, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015). The Citizen Groups have met that standard. They have clearly identified (and submitted to the court) nine agency documents that clearly relate to BLM's decisionmaking process about whether to repeal the 2015 Rule.[2] And the Citizen Groups' Motion provides reasonable, non-speculative explanations for why agency decisionmakers considered each document, which BLM fails to refute.

### I. Documents Showing Meetings and Verbal Input to Decisionmakers Are Part of the Complete Record (Documents 3–9).

The administrative record lodged by BLM contains a notable gap during the key time period between March 9 and March 15, 2017, when the agency responded to a Tenth Circuit order by announcing that it planned to repeal the 2015 Rule. Citizen Groups' Motion at 7–8. The record lodged by BLM includes almost no documents from that time period relevant to the agency's critical decision. Id. at 8.

[2] The documents are listed on the final page of the Citizen Groups' Motion and this Reply, and attached as Exhibit B to the Declaration of Michael S. Freeman (Dec. 10, 2018), ECF No. 85-1.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 2

To fill the gap, the Citizen Groups moved to complete the administrative record with seven documents (Documents 3–9) showing the written and verbal input that Secretary Zinke and his political appointees received during (and immediately preceding) the March 2017 window. See Citizen Groups' Motion at 7–10. Much of this input came from oil and gas industry trade associations and other organizations seeking to overturn the 2015 Rule in court. See id. at 10–14. Without this evidence, the Court would be left to consider "a fictional account of the actual decisionmaking process." Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1548 (9th Cir. 1993) (quotation omitted).

BLM's arguments against including these documents are meritless.

**A. Calendar Notices and Emails Regarding Meetings Are Part of the Administrative Record (Documents 3, 4, 7, 8, 9).**

BLM first argues that several of these documents consist of calendar entries or scheduling emails that do not "contain . . . information or analysis" and thus were not "considered" by the agency. BLM Resp. at 6–7. BLM cites no case law to support this novel and incorrect standard for which documents should be included in an administrative record.[3]

Courts have recognized that references to meetings are properly included in the administrative record as evidence of verbal input that agency decisionmakers received in the course of reaching a decision. Cal. ex rel. Lockyer v. U.S. Dep't of Agric., No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006) (ordering agency to complete administrative record with "agency meeting notices regarding discussions" about revising regulation); see also, e.g., Open Spirit, LLC v. United States, 131 Fed. Cl. 756, 781 (2017) (calendar entry); Water Supply & Storage Co. v. U.S. Dep't of Agric., 910 F. Supp. 2d 1261, 1267–69 (D. Colo. 2012) (completing administrative record with documents memorializing agency meeting); Google, Inc. v. United States,

[3] Moreover, BLM is wrong to assert that Document 8 "contains no substantive content that the agency could have considered." See BLM Resp. at 7. Document 8 is an April 2015 briefing memo for Secretary Zinke in preparation for his meeting with Intervenor-Defendant Western Energy Alliance (WEA). That memo states that WEA is "very concerned" about the 2015 Rule. Freeman Decl. Ex. B at FOIA-47. Document 8 shows that WEA's objections to this hotly-contested regulation were conveyed to the Secretary of the Interior just weeks after his confirmation, which is a substantive and highly relevant fact.

95 Fed. Cl. 661, 679–80 (2011) (email records demonstrating that meetings occurred).  Earlier this year, this Court observed that "[v]erbal input . . . can be every bit as influential—perhaps more influential—in shaping informal agency decisions as written input."  Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec., No. C 17-05211-WHA, 2018 WL 1210551, at *4 (N.D. Cal. Mar. 8, 2018).  To ensure that the administrative record "capture[d] the factual information verbally conveyed and considered in connection with the decision to rescind" the Deferred Action for Childhood Arrivals (DACA) rule, the court ordered the federal defendants to complete the administrative record with documents showing which persons "provided verbal input regarding the rescission of DACA."  Id. at *3–4.

       While ignoring most of this case law, BLM attempts to distinguish Regents because the court there did not order the federal defendants to specifically add calendar entries to the administrative record.  BLM Resp. at 7.  The court, however, gave the federal defendants several options, such as including in the administrative record "references to a meeting on the subject," as well as "the relevant files and emails of such subordinates [who supplied verbal input]."  Regents, 2018 WL 1210551, at *4.  The documents the Citizen Groups seek to add to the administrative record here provide similar information: calendar entries and emails about scheduling a meeting are clearly "references to a meeting."[4]  These materials are necessary to give the Court a complete picture of who provided verbal input to agency decisionmakers when they chose to repeal the 2015 Rule.  For example, the fact that agency decisionmakers met with Secretary Zinke immediately before BLM announced its plan to repeal the 2015 Rule (Document 4) was undoubtedly considered by those decisionmakers in making that announcement and in proceeding to propose and finalize that Repeal.  Similarly, evidence that agency decisionmakers received verbal input from representatives of industry trade associations that were "very concerned about the" 2015 Rule (WEA), and called

---

[4] If anything, the Regents court went much farther than what the Citizen Groups request here: it contemplated adding not just references to meetings, but also pulling in potentially extensive emails, notes and files from subordinates that had not yet been specifically identified.  2018 WL 1210551, at *4.  That approach was necessary because the agency had submitted an administrative record that comprised of only 14 publicly-available documents totaling just 256 pages.  Id. at *1.  The Citizen Groups take a more targeted approach here because BLM has lodged a more robust (although nevertheless incomplete) record in this case.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)*      4

eliminating the 2015 Rule a "Priorit[y] for Immediate Action" (American Petroleum Institute), belongs in the administrative record. Citizen Groups' Motion at 12–13 (Documents 3, 8, 9).

Moreover, the record filed by BLM already includes similar documents related to scheduling meetings with agency decisionmakers. For example, BLM declined a request from the National Ground Water Association for a meeting about the Repeal. HFRR_003584–86. BLM also included in the administrative record an email thread showing that the agency met with representatives of the Thlopthlocco Tribal Town of Oklahoma after the Tribe (which was opposed to the Repeal) requested formal government-to-government consultation. HFRR_002553, HFRR_002555. Among those emails was a request from the acting BLM director for verbal input from a subordinate about the requested meeting, which did not address the substance of that input. HFRR_002503–04. BLM then belatedly met with the Tribe on January 18, 2018 (after the Repeal was finalized), and included in the administrative record an attendance sheet listing the members of the Thlopthlocco, Seminole, and Muscogee Creek Nations who attended. HFRR_002559.

The only difference between these documents, and Documents 3, 4, 7, 8, and 9, appears to be that BLM has included evidence of meetings (or refusals to meet) with the Repeal's opponents in the record, but omitted similar evidence of meetings with entities advocating for the Repeal. This is obviously not a valid basis for limiting the scope of the record. See Regents, 2018 WL 1210551, at *2 (explaining that the "whole" administrative record "includes evidence contrary to the agency's position" (quoting Thompson, 885 F.2d at 555)). For example, there is no reason why documentation of a meeting with Oklahoma tribes opposed to the Repeal is part of the record, but similar documentation of BLM's earlier meeting with the Ute Tribe (which supported the Repeal) should not be. See Freeman Decl. Ex. B at FOIA-29, FOIA-31–33 & FOIA-45 (Documents 3 and 7). Documents 3, 4, 7, 8, and 9 are no less "substantive" than other scheduling emails and similar documents BLM has included in the record. The fact that the relevant decisionmakers were receiving verbal input about key issues related to the Repeal, when that verbal input occurred, and who that verbal input was coming from, are all part of the agency's decisionmaking process and thus are properly part of the administrative record.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 5

**B. Communications About Litigation Over the 2015 Rule Are Part of the Administrative Record for the Repeal (Documents 3, 5, 6).**

BLM also argues that some documents are not properly part of the administrative record because they concern litigation over the 2015 Rule, rather than the Repeal. BLM Resp. at 7–8. This is a distinction without a difference because BLM's decision to rescind the 2015 Rule was intertwined with litigation over that rule. See United States v. Carpenter, No. 3:99-cv-00547-RLH-RAM, 2011 WL 4763675, at *2 (D. Nev. Oct. 7, 2011) (concluding that documents about both the settlement decision at issue and the underlying lawsuit that was settled were properly part of the administrative record). As BLM admits, one of the reasons it pursued the Repeal was to "eliminate[] the need for further litigation about" the 2015 Rule. BLM Resp. at 2. In the Repeal's preamble, BLM discussed the litigation over the 2015 Rule multiple times. See 82 Fed. Reg. at 61,925, 61,935, 61,947. And BLM actually announced its plan to repeal the 2015 Rule in a pleading filed in that litigation, in response to the Tenth Circuit's order that BLM clarify the new administration's position. See Citizen Groups' Motion at 4, 7–10.[5]

BLM also argues two emails (Documents 5 and 6) forwarding news articles about the Tenth Circuit litigation to Ms. MacGregor (the Department of the Interior (Interior Department) official who signed the proposed Repeal, 82 Fed. Reg. 34,464, 34,470 (July 25, 2017)) "do not contain any substance that the agency could have considered." BLM Resp. at 7. As discussed above, this is the wrong standard to apply. See supra pp. 3–5. Moreover, both documents are, in fact, "substantive." Document 5 is an email from an oil and gas industry lobbyist to Ms. MacGregor, stating "[n]eedless to say, DOI/BLM needs to have their attorneys reach out to the industry and state attorney working on the case. . . . [B]efore anything can move forward they need to direct their DOJ attorneys to enter into settlement negotiations." Freeman Decl. Ex. B at FOIA-40. This advice from a stakeholder to the Interior Department official ultimately responsible for signing the proposed Repeal is clearly

[5] BLM also has agreed to add to the administrative record the district court and appellate pleadings from the litigation challenging the 2015 Rule, which the Citizen Groups attached to their comments on the proposed Repeal. See BLM Resp. at 2–3 & n.2. Those court records comprise the large majority of the 1,191 documents that BLM has agreed to add to the record (in addition to the administrative record for the 2015 Rule).

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 6

substantive. While BLM did not decide to settle with WEA or other parties challenging the 2015 Rule, the Repeal gave those parties almost everything they could have achieved in a settlement.

Similarly, in Document 6, Interior Department staffer Jill Moran forwarded to Ms. MacGregor a news article reporting that the Tenth Circuit had ordered BLM to clarify "whether [it] plan[s] to continue fighting for the Interior Department's fracking rule." Id. at FOIA-42. This information was sufficiently significant to send Ms. MacGregor immediately after the Tenth Circuit issued its order. See id. (Ms. Moran sent her email at 8:56 A.M., and the article states that the Tenth Circuit issued the order "last night . . . [i]n a surprise move"). The Tenth Circuit's order compelling the new administration to clarify whether it intended to continue defending the 2015 Rule resulted in BLM announcing for the first time—just 6 days later—that it intended to repeal the 2015 Rule. See Citizen Groups' Motion at 4. Sending a news article reporting that important development to the key agency decisionmaker clearly served to convey substantive information.

Notably, BLM included similar agency emails forwarding news articles about milestones in the Tenth Circuit litigation in the administrative record. See HFRR_003481–84, HFRR_003641, HFRR_017526–27, HFRR_018314–16. BLM has not attempted to distinguish Documents 5 and 6 from these administrative record documents. The agency's selective approach should be rejected. See Cal. ex rel. Lockyer, 2006 WL 708914, at *3–4 (finding agency's practice of including some documents that predated a key point in the agency's decisionmaking process, but not others, to be "inconsistent," and ordering the agency to complete the record with the excluded documents).

## II. Congressional Documents Explaining the Need for the 2015 Rule Should Be Considered by the Court (Documents 1 and 2).

### A. The Court Should Complete the Administrative Record with Documents 1 and 2.

The Citizen Groups also seek to complete the administrative record with two documents relating to Congressional testimony about the 2015 Rule. These records provide important details explaining the need and justification for the 2015 Rule, including that under BLM's outdated 1980s regulations, the agency does not know how many wells are being hydraulically fractured. Citizen Groups' Motion at 14–16. Nor has BLM been collecting the information necessary to track how often companies have problems when cementing the protective casing around wells. Id. at 16. This

testimony also provides evidence of accidents and risks addressed by the 2015 Rule, and how the 2015 Rule provides benefits above and beyond state regulations. Id. at 16–17. These documents were reviewed by, and presented to, two individuals who later were extensively involved in repealing the 2015 Rule: Ms. MacGregor and Ms. Moran. Id. at 15, 17. Documents 1 and 2 are properly part of the administrative record because they must have been directly or indirectly considered by Ms. MacGregor and Ms. Moran.

Tellingly, BLM does not question the accuracy of the testimony in Documents 1 and 2. In particular, BLM does not dispute that under its 1980s-era regulations, it does not know how many fracturing operations are actually occurring, or how frequent cementing problems happen during well construction. See BLM Resp. at 8–11. Instead, BLM argues that Ms. MacGregor and Ms. Moran could not have considered these documents because they were prepared 18 months before the 2017 rulemaking. Id. at 8.[6] But the Repeal did not arise from whole cloth in March 2017—it was the continuation of a BLM regulatory initiative that began long before 2015. See Citizen Groups' Motion at 3 (noting that BLM began effort to update its regulations in 2010); see also 82 Fed. Reg. at 61,924–25 (discussing issuance of 2015 Rule and subsequent litigation).

BLM has conceded this point by agreeing to include the administrative record for the 2015 Rule in the record for the Repeal. See BLM Resp. at 2–3 & n.2. The 2015 administrative record contains numerous documents far older than Documents 1 and 2. Moreover, the incomplete administrative record that BLM filed for this case already includes at least 166 documents that predate March 2017, including documents from as early as 1988. See Index of "Skinny" HFRR Administrative Record at lines 736–901. Pretending that BLM did not consider any documents from before 2017 in developing the Repeal would render the record "a fictional account of the actual decisionmaking process." Portland Audubon Soc'y, 984 F.2d at 1548 (quotation omitted).

[6] BLM is also wrong to assert that the Citizen Groups should have submitted Documents 1 and 2 with their comments on the proposed Repeal. BLM Resp. at 8. Plaintiff Southern Utah Wilderness Alliance only received these documents from BLM in response to its FOIA requests in July 2018—more than nine months after the September 25, 2017 deadline for public comments on the proposed Repeal. Suppl. Decl. of Michael S. Freeman ¶¶ 4–5 (Dec. 31, 2018) (attached as Exhibit 1).

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 8

This Court has rejected an argument similar to the one BLM makes here.  In California ex rel. Lockyer, plaintiffs challenged a Forest Service decision that extensively changed a controversial regulation (the Forest Service's roadless rule) promulgated by the prior presidential administration.  2006 WL 708914, at *1.  The Forest Service argued that a Senate report and supporting documents were not part of the administrative record because "they pre-date the beginning of the decision-making process for the [revised] Rule, whose 'active' phase began in February 2004." Id. at *3.  The court rejected that claim because the record showed that efforts to overturn or review the earlier regulation had begun before 2004, and in light of the agency's "own recognition that the administrative record does include documents pre-dating" the date when agency asserted rulemaking process began.  Id.  The same is true in this case.

The Citizen Groups are not simply speculating that agency officials must somehow have been aware of 2015 Congressional testimony, as BLM asserts.  See BLM Resp. at 6, 8 & n.3.  Rather, the Citizen Groups have identified the specific agency decisionmakers who received Documents 1 and 2, when they got them, and under what context.  This showing overcomes the presumption that BLM has filed a complete administrative record.  See Sierra Club v. Zinke, No. 17-cv-07187-WHO, 2018 WL 3126401, at *3 (N.D. Cal. June 26, 2018); Water Supply & Storage Co., 910 F. Supp. 2d at 1266.  Ms. Moran was directly involved in preparing BLM Director Neil Kornze's statements in Documents 1 and 2.  Freeman Decl. Ex. B at FOIA-1, FOIA-20.  Ms. Moran also received a copy of Professor Hannah Wiseman's written testimony in Document 2 in advance of the July 2015 Congressional hearing.  Id. at FOIA-7.  Similarly, Ms. MacGregor received a copy of Document 2.  Id. at FOIA-20.

Moreover, efforts to eliminate the 2015 Rule (which Ms. MacGregor helped lead in 2017, Citizen Groups' Motion at 9–10), were already underway when the 2015 Congressional hearings occurred.  At the time of the March and July 2015 hearings, WEA and other entities already had challenged the 2015 Rule in court.  Citizen Groups' Motion at 3; First Am. Compl. ¶ 76.  The leadership of the Congressional subcommittee holding the hearings also was attacking the 2015 Rule.  See U.S. House of Representatives, Subcomm. on Energy and Minerals, Hearing Memo 1–2

(July 15, 2015).[7]  In fact, the express purpose of the July 2015 hearing was to question the validity and need for the 2015 Rule.  See id. at 4.  The subcommittee staff memo for the July 2015 hearing explained that the hearing would focus on "egregious issues" presented by 2015 Rule, including that it allegedly "duplicates state efforts, causes unnecessary delays and burdens to operators, and is premised on questionable authority."  Id. at 1–2.  As a staff member for that subcommittee and its Chair, Ms. MacGregor received the written testimony in Document 2.  Freeman Decl. ¶ 9 & Ex. B at FOIA-20.  In that role, she may also have prepared the staff memo for the July 2015 hearing.

There is no reason to believe that Ms. MacGregor or Ms. Moran suddenly developed amnesia when they started working for the new presidential administration in 2017.  BLM's repeal of the 2015 Rule represented the continuation of efforts that had been ongoing for more than 18 months.  While Ms. MacGregor wore different hats in 2015 and 2017, she was directly involved throughout the effort to eliminate the 2015 Rule.  BLM cannot ignore this background in determining what information was before agency decisionmakers like Ms. MacGregor and Ms. Moran during the Repeal of the 2015 Rule.  See Portland Audubon Soc'y, 984 F.2d at 1548.

**B.    In the Alternative, the Court Should Supplement the Record or Take Judicial Notice of Documents 1 and 2.**

In the alternative, it is appropriate to supplement the record with Document 1, and for the Court to take judicial notice of Documents 1 and 2.  Citizen Groups' Motion at 17–19.

**1.    The Court Should Supplement the Record with Document 1.**

The Ninth Circuit allows courts to supplement the record with evidence from outside the administrative record in several circumstances, including:  (a) to determine whether the agency has considered all relevant factors, and (b) to explain technical terms or complex subject matter.  Defs. of Wildlife v. U.S. Fish & Wildlife Serv., No. 16-CV-01993-LHK, 2016 WL 4382604, at *9 (N.D. Cal. Aug. 17, 2016) (quoting Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (9th Cir. 2006)).  Document 1 (Director Kornze's Questions and Answers about the 2015

---

[7] Available at: https://naturalresources.house.gov/uploadedfiles/emrhearingmemo_7_15_15.pdf.  For the reasons discussed below, the court can take judicial notice of this public record on a government website.  See infra pp. 12–13.

Rule) meets both grounds. First, it shows that BLM failed to consider all relevant factors in repealing the 2015 Rule, because the agency ignored the significant gaps in information it was collecting about well cementing problems and hydraulic fracturing operations. Citizen Groups' Motion at 17–18. Second, Document 1 provides a clear and useful explanation that will help the Court understand the complex technicalities of BLM's bureaucratic oversight of hydraulic fracturing operations and well construction. Id.

BLM's Response actually illustrates why the first ground for supplementation applies. BLM asserts that Document 1 was "not considered directly or indirectly by the present Administration in proposing or promulgating the 2017" Repeal. Decl. of Steven Wells ¶ 11 (Dec. 21, 2018), ECF No. 90 (Ex. 1 to BLM's Resp.). That is exactly the Citizen Groups' point. The Kornze Question and Answer document identifies a key factor BLM failed to consider: BLM's need to know when hydraulic fracturing operations are occurring, and the frequency of cementing problems, in order to adequately manage those operations. Citizen Groups' Motion at 15–16, 18.

While claiming that Director Kornze's admissions in Document 1 are "cumulative" of what is already in the administrative record, BLM fails to point to anything in the record that actually addresses these highly relevant factors. BLM Resp. at 10.[8] The 2015 Rule's preamble, for example, is circumspect about the extent and nature of BLM's information gaps. It states vaguely that the 2015 Rule's new "collections of information . . . are necessary to enable the BLM to meet its statutory obligations" for protecting public lands, 80 Fed. Reg. at 16,154, but does not describe the large gaps identified in Document 1.

Similarly, BLM claims that the second ground for supplementing the record does not apply because BLM's information collection regarding hydraulic fracturing operations is not "so complex that extra-record evidence might be warranted." BLM Resp. at 11. But BLM fails to explain how this same information could be gleaned from the current administrative record, or from BLM

[8] BLM cites In re Delta Smelt Consol. Cases, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946 (E.D. Cal. June 21, 2010), in which the court declined to supplement the record with a particular research paper addressing a topic that the agency had considered. Id. at *5–6. Here, BLM did not consider the points raised in Document 1 at all.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 11

regulations. Director Kornze's direct admissions about the important information gaps addressed by the 2015 Rule will help the Court understand this complex and technical subject matter. See Pub. Power Council v. Johnson, 674 F.2d 791, 794–95 (9th Cir. 1982) (recognizing that supplementing administrative record could be necessary to understand "complex and vague contract clauses"); Cty. of Los Angeles v. Shalala, 992 F. Supp. 26, 35 n.11 (D.D.C. 1998) (considering affidavit to explain complex data gathering procedures, because the agency's implementation of the statute at issue "is certainly complex subject matter"), rev'd on other grounds, 192 F.3d 1005 (D.C. Cir. 1999).

Nor are the points in Document 1 insignificant or mere "nuance[s]," as BLM suggests. BLM Resp. at 10. The Kornze Question and Answer document demonstrates that under its outdated regulations, BLM has major blind spots in the oversight of oil and gas development. An understanding of those blind spots is necessary for this Court to adequately review BLM's Repeal decision. One major rationale BLM offered for the Repeal was that "[a]ny marginal benefits provided by the 2015 rule" are minimal because problems with modern hydraulic fracturing operations are allegedly a "rarity." See 82 Fed. Reg. at 61,938–39; see also First Am. Compl. ¶ 89. Document 1, however, shows that BLM drew that conclusion without knowing how often cementing defects arise, or even how often hydraulic fracturing is used, on the wells it approves.

Essentially, Director Kornze's Questions and Answers show that: (a) BLM has not been collecting information on the frequency of hydraulic fracturing or cementing flaws in the wells it approves; (b) the agency nonetheless assumed in the absence of such data that problems are rare or minimal; and (c) the Repeal fails to consider the benefits of collecting that information so that BLM can better protect public lands, water and public health. These factors are highly relevant for this Court's review, and warrant supplementing the record.

**2. The Court Can Take Judicial Notice of the Congressional Testimony.**

The Court also may take judicial notice of Document 2 (Director Kornze's and Professor Wiseman's written Congressional testimony), and Document 1 to the extent it was reflected in a video of Director Kornze's live testimony. Citizen Groups' Motion at 18 n.11, 19. Courts regularly take judicial notice of such Congressional testimony. Id. at 19 (collecting cases).

BLM does not dispute the fact or accuracy of Director Kornze's or Professor Wiseman's Congressional testimony. Nor does it dispute that courts frequently take judicial notice of such testimony. See BLM Resp. at 11. Instead, BLM argues that judicial notice is not allowed in APA cases unless one of the grounds for supplementing the record also applies. Id. This position is incorrect as a legal matter: courts routinely take judicial notice of materials in APA cases without supplementing the record. See, e.g., Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260, 276 n.4, 280 n.7 (4th Cir. 2018) (taking judicial notice of official documents posted on agency web site); Desert Water Agency v. U.S. Dep't of Interior, 849 F.3d 1250, 1253 n.2 (9th Cir. 2017); City of Las Vegas, Nev. v. Fed. Aviation Admin., 570 F.3d 1109, 1113 n.1 (9th Cir. 2009) (taking judicial notice of materials in National Environmental Policy Act case); N.M. ex rel. Richardson v. BLM, 565 F.3d 683, 702 nn. 21–22, 719 n.48 (10th Cir. 2009) (similar); see also People with Disabilities Found. v. Colvin, No. 15-cv-02570-HSG, 2016 WL 2984898, at *3 (N.D. Cal. May 24, 2016) (ruling that policies, records and reports posted on agency web site are subject to judicial notice).[9]

Apart from its misguided legal theory, BLM offers no objection to the Citizen Groups' request for judicial notice. The Court should therefore take judicial notice of Documents 1 and 2.

## CONCLUSION

For the foregoing reasons, the Court should grant the Citizen Groups' Motion, and complete the administrative record with Documents 1–9. In the alternative, the Court should supplement the administrative record with Document 1, and take judicial notice of Document 2.

[9] In the district court case BLM cites, BLM Br. at 11, the court declined to consider a parking announcement that a party only submitted with a post-summary judgment motion for reconsideration. Today's IV, Inc. v. Fed. Transit Admin., No. LA CV13-00378 JAK (PLAx), 2014 WL 5313943, at *7 (C.D. Cal. Sept. 12, 2014). The court viewed the announcement as irrelevant to reviewing the agency's decision because it post-dated that decision. Id. at *8; see also Madison Servs., Inc. v. United States, 92 Fed. Cl. 120, 130 (2010) (cited by BLM) (declining to take judicial notice of document where plaintiff relied on it rather than citing any supporting evidence in administrative record). Documents 1 and 2 are readily distinguishable from the documents at issue in these cases. Moreover, Today's IV and Madison Services cannot overrule the Ninth Circuit cases allowing judicial notice in APA cases.

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 13

Respectfully submitted this 31st day of December, 2018,

/s/ Nathan Matthews
Nathan Matthews, CA Bar No. 264248
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
Phone: (415) 977-5695
Fax: (510) 208-3140
nathan.matthews@sierraclub.org

*Attorney for Plaintiff Sierra Club*

Michael S. Freeman, CO Bar No. 30007 (*admitted pro hac vice*)
Joel Minor, CO Bar No. 47822 (*admitted pro hac vice*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Phone: (303) 623-9466
Fax: (303) 623-8083
mfreeman@earthjustice.org
jminor@earthjustice.org

*Attorneys for Plaintiffs Sierra Club, Center for Biological Diversity, Diné Citizens Against Ruining Our Environment, Earthworks, Fort Berthold Protectors of Water and Earth Rights, Southern Utah Wilderness Alliance, The Wilderness Society, and Western Resource Advocates*

**INDEX OF DOCUMENTS MISSING FROM ADMINISTRATIVE RECORD (EXHIBIT B TO FREEMAN DECLARATION, ATTACHED TO CITIZEN GROUPS' MOTION TO COMPLETE AND/OR SUPPLEMENT THE ADMINISTRATIVE RECORD)**

| DOC. NO. | PAGE RANGE | DESCRIPTION |
|---|---|---|
| 1 | FOIA-001 to FOIA-006 | BLM Director Neil Kornze Questions for BLM-Forest Service Fiscal Year 2016 Budget Hearing (Mar. 26, 2015) |
| 2 | FOIA-007 to FOIA-028 | Congressional Testimony of BLM Director Neil Kornze and Hannah J. Wiseman, re: The Future of Hydraulic Fracturing on Federally Managed Lands, U.S. House of Representatives, Committee on Natural Resources, Subcommittee on Energy and Mineral Resources (July 13, 2015) |
| 3 | FOIA-029 to FOIA-033 | Emails re: Settlement Meetings with Ute Tribe and Western Energy Alliance (Feb. 13–15, 2017) |
| 4 | FOIA-034 to FOIA-037 | Calendar Invite re: Meeting with Secretary Zinke to Discuss Fracking Rule (March 15, 2017) |
| 5 | FOIA-038 to FOIA-041 | Email from Kent Burton to Katharine MacGregor re: Hydraulic Fracturing Rule (March 10, 2017) |
| 6 | FOIA-042 to FOIA-044 | Email from Jill Moran to Katharine MacGregor and Richard Cardinale with Article re: Hydraulic Fracturing Rule Litigation (March 10, 2017) |
| 7 | FOIA-045 | Calendar Invite re: Katharine MacGregor Meeting with Ute Tribe re Hydraulic Fracturing Rule (Mar. 10, 2017) |
| 8 | FOIA-046 to FOIA-047 | Western Energy Alliance Briefing Memorandum for Secretary Zinke. (April 25, 2017) |
| 9 | FOIA-048 to FOIA-050 | James Cason Calendar Entries |

Plaintiff Citizen Groups' Reply Points and Authorities In Support of Motion to Complete and/or Supplement the Administrative Record
*Case No. 4:18-cv-00524-HSG (Related Case No. 4:18-cv-00521-HSG)* 15